PATRICK OLIN POINT AND DARLENE WALKER POINT, APPELLANTS, v. THE STATE OF NEVADA, RESPONDENT.

No. 15418

April 9, 1986                                    717 P.2d 38

[Rehearing denied September 4, 1986]

*Morgan D. Harris,* Public Defender, *Susan Deems Roske,* Deputy Public Defender, Las Vegas, for Appellant Patrick Olin Point.

*Thomas P. Pitaro,* Las Vegas, for Appellant Darlene Walker Point.

*Brian McKay,* Attorney General, Carson City; *Robert J. Miller,* District Attorney, and *James Tufteland,* Deputy District Attorney, Las Vegas, for Respondent.

## OPINION

*Per Curiam:*

Appellant Patrick Olin Point assigns numerous errors to his convictions for burglary (two counts), grand larceny (two counts) and possession of stolen property. All of Patrick's contentions are without merit except as to the conviction for possession of stolen property, which must be reversed. Appellant Darlene Walker Point's convictions for burglary, grand larceny and possession of stolen property are affirmed without exception.

### FACTUAL AND PROCEDURAL BACKGROUND

Mike and Zella Burns, victims of appellants' criminal activities, owned and operated a restaurant and motel in Mesquite, Nevada. The two proprietors customarily kept large quantities of currency in their residence to service the needs of their businesses. They also collected silver dollars and uncirculated dollar bills. On September 25, 1982, Mike and Zella returned home from a nine-day vacation and discovered that their house had been ransacked and about $200,000 in bills and $40,000 in silver and other coins had been taken from a vault in the garage. The victims testified at trial that a window to their house had been

pried open and a set of men's footprints together with a smaller set of footprints were visible leading from the window and across a ditch away from their property.

On March 9, 1983, when the two victims again returned from a trip, one or more intruders had removed numerous coins, including a silver dollar with a hole in it, and a number of foreign coins. This time a garage window had been broken and the same vault had been relieved of its contents. The alarm system at the residence had been disconnected.

On April 30, 1983, after receiving an informant's tip, Las Vegas police detective Eric DuCharme served a search warrant at appellants' residence and seized bank bags, containers filled with over $8,000 in silver dollars, including a silver dollar with a hole punched through the center of it, nickels, pennies and foreign coins, a rubber mask, a pistol, and handwritten tally sheets with numerical computations similar to those made by Mike and Zella Burns when bundling their bills. A bundle of $100 bills bound by a paper bill wrapper was removed from Darlene's purse. On May 10, 1983, DuCharme executed a second search warrant at appellants' residence and seized furniture and other property thought to have been purchased with the victims' money, various receipts, personal papers, and an additional amount of cash.

At trial, Zella Burns identified as her property the bank bags, the handwritten tabulation sheets, the bundle of $100 bills wrapped with the paper bill wrapper and several unusual coins. A handwriting expert confirmed that the handwriting on sheets with numerals on them seized in the search was that of Mike Burns.

Darlene Point had worked for Mike and Zella Burns as a cashier in 1982 and had observed large sums of cash being brought in and out of the business. Patrick Point was absent from his work from September 20, 1982 to October 7, 1982. The secretary for a doctor who signed a work release slip for Patrick covering those dates testified at trial that the release was given as a courtesy, that Patrick was not examined by the doctor and that Patrick appeared to have no medical problems when the release slip was given. Patrick resigned from his place of employment on October 14, 1982.

The bookkeeper for Patrick's former employer testified that Patrick's annual income was less than $22,000 in both 1981 and 1982. Testimony also revealed that in late September 1982 Patrick purchased for cash a $9,000 motor home. Several days later, Patrick purchased a 1978 Winnebago motor home by adding approximately $14,000 in hundred dollar bills to the trade-in allowance for the other motor home. In the middle of October 1982, Patrick bought a 1983 Ford Bronco and in early December 1982, he paid for a pickup truck with a quantity of two dollar

bills and a check, stating that he had won the money gambling. During the course of the trial, testimony revealed numerous other acquisitions of furniture and other property by appellants during the seven-month period immediately following the first burglary.

The defense presented evidence indicating that when Mike Burns was taken to appellants' residence at the time of the search to identify property, he had freely moved in and out of the house unaccompanied by officers. The defense argued in closing that Mike Burns had planted the stolen property in the Points' residence and that Zella Burns misidentified the stolen property.

The jury found Patrick guilty of two counts of burglary, two counts of grand larceny and possession of stolen property. The jury found Darlene guilty of the September 1982 burglary and larceny, and possession of stolen property, and acquitted her of the March 1983 burglary and larceny.

## DISCUSSION

Patrick argues that it was error to convict him on both the theft offenses and the offense of possession of stolen property. We agree and accordingly reverse Patrick's conviction for possession of stolen goods.

When any felony is committed after a building is entered with the specific intent to commit a felony, the perpetrator has committed both burglary and the subsequent felony and may be charged and sentenced for both offenses. Sheriff v. Stevens, 97 Nev. 316, 630 P.2d 256 (1981). Thus, Patrick and Darlene could properly be convicted of both burglary and grand larceny. However, in interpreting the federal theft statutes, the United States Supreme Court has held it is error for trial courts to fail to charge the jury that they could not convict of both larceny and receiving stolen property. Milanovich v. United States, 365 U.S. 551, 555 (1961). The United States Supreme Court has also decided that it was improper to "pyramid penalties" for the offense of receiving the fruits of one's own theft. Heflin v. United States, 358 U.S. 415, 419 (1958); United States v. Gaddis, 424 U.S. 544, 547 (1975). The Supreme Court concluded that the Legislature, in enacting the proscription against receipt and possession, was "trying to reach a new group of wrongdoers, not to multiply the offense of the . . . robbers themselves." Heflin v. United States, 358 U.S. at 420. We have accordingly required a new trial on burglary and receiving stolen property charges where an instruction in accordance with *Milanovich* was not given and there was no way of knowing whether a properly instructed jury would have found the defendant guilty of burglary or receiving. Shepp v. State, 87 Nev. 179, 484 P.2d 563 (1971).

In the absence of any legislative intent to the contrary, we similarly refuse to attribute to the Nevada Legislature an intent to compound the punishment for larceny, robbery or embezzlement by permitting convictions for the receipt or possession of stolen property against the one who took the property in the first instance. By enacting the statute addressing the receipt or possession of stolen property, NRS 205.275, it is apparent that the Legislature sought to reach and punish those who unlawfully receive or possess stolen property from the initial wrongdoer.

The State produced sufficient evidence to convict Patrick for burglary and grand larceny. However, his conviction for possessing the same property that he had stolen constituted punishment unintended or specified by any Nevada criminal statute. Moreover, because Patrick did not distribute his booty to others, society's interest in proscribing possession of stolen property, *i.e.*, isolating thieves from networks for disposal of their spoils, was not furthered in any way when the jury convicted him of possession. Patrick was not part of the class of persons that society has an interest in punishing for possession of stolen goods. The jury should have been instructed that they could convict defendant of either theft or possession, but not both. The court did not so instruct, and the refusal to grant the motion for new trial on this ground was error. *See* Shepp v. State, 87 Nev. at 179, 484 P.2d at 563; Thomas v. United States, 418 F.2d 567, 568 (1969).

Where the accused cannot be convicted of both crimes, both convictions are reversible when the reviewing court cannot ascertain what verdict would have been returned by a properly instructed jury. Milanovich v. United States, 365 U.S. at 551; Heflin v. United States, 358 U.S. at 415; Shepp v. State, 87 Nev. at 179, 484 P.2d at 563. However, where it is ascertainable upon which count, if either, a properly instructed jury would have convicted the defendant, a new trial would result in an unnecessary expenditure of judicial resources. Under circumstances where the elements of the greater offense are sufficiently established, the lesser offense of possession or receiving should simply be reversed without affecting the conviction for the more serious crime. United States v. Gaddis, 424 U.S. at 551-553; People v. Francis, 180 Cal.Rptr. 873 (Cal.Ct.App. 1982); People v. Perez, 115 Cal.Rptr. 405 (Cal.Ct.App. 1974); People v. Lohman, 86 Cal.Rptr. 221 (Cal.Ct.App. 1970); People v. Taylor, 40 P.2d 870 (Cal.Ct.App. 1935).

Zella Burns testified that the disfigured silver dollar was taken in the March 1983 burglary. The jury apparently based Patrick's

conviction for the larceny connected with that burglary on the inference of theft that arose from his possession of distinctive property taken at that time. People v. McFarland, 26 Cal.Rptr. 473 (Cal. 1962). Other physical evidence of the circumstances of the March 1983 burglary, *i.e.*, the burglar alarm had been disconnected and the thief knew where to look for valuables without having to ransack the home as in the September 1982 burglary, also supports the conclusion that the jury, under proper instruction, would have convicted Patrick of the March 1983 burglary and larceny. We therefore reverse Patrick's conviction of possession, but leave his burglary and larceny convictions intact. People v. Perez, 115 Cal.Rptr. at 405.

Our holding with regard to Patrick does not render erroneous the conviction of Darlene for possession of stolen property. Darlene falls precisely within the class of persons which the Legislature intended to affect by its enactment of the statute proscribing possession of stolen property. The State lacked sufficient evidence to prove Darlene guilty of the second burglary, but she was in possession of the property taken in both burglaries. As a possessor who did not personally participate in the March 1983 burglary and larceny, Darlene was properly adjudged guilty of the possession of property taken by Patrick during the commission of those crimes. People v. Taylor, 40 P.2d at 870.

Appellants next contend that their convictions are infirm because the indictment failed to allege the theory of aiding and abetting. Appellant argue that the prosecutor's implications during closing argument that Darlene encouraged Patrick's criminal activity after learning through her employment of the substantial amounts of money kept by Mike and Zella Burns constituted a change in the theory of the case and allowed the jury to convict on the theory of aiding and abetting. Appellants are wrong.

In Barren v. State, 99 Nev. 661, 669 P.2d 725 (1983), we held where the prosecution seeks to establish a defendant's guilt on a theory of aiding and abetting, the indictment should specifically allege this theory and, if known, the specific acts constituting the means of the aiding and abetting in order to afford the defendant adequate notice to prepare a defense. However, we need not consider this issue on appeal since there was no objection at trial that would have alerted the district court to the necessity of avoiding the possibility of error. Mercado v. State, 100 Nev. 535, 688 P.2d 305 (1984). Moreover, this case, unlike *Barren,* did not involve the problem of the prosecution concealing its primary theory until just prior to trial, or vacillating in its theory during

trial. Additionally, appellants have not shown how uncertainty concerning the State's theory proved prejudicial to the presentation of their defense to the jury.[1]

Appellants also maintain that the trial court erred in denying their motion to suppress evidence obtained in the search of their residence. Appellants argue that detective DuCharme's affidavit in support of the April search warrant omitted the fact that the informant, Larry Magnum, was incarcerated and had a criminal record at the time the affidavit was prepared. Appellants reason that such an omission reveals bad faith on the part of the detective justifying suppression under United States v. Leon, 104 S.Ct. 3405 (1984). We disagree.

United States v. Leon held that evidence obtained by officers acting in reasonable reliance on a search warrant issued by a neutral judge or magistrate that is ultimately found to be invalid for want of probable cause is admissible in the prosecution's case in chief. The court concluded that where law enforcement officers act in objective good faith reliance within the scope of a warrant obtained from a judge or magistrate, exclusion of evidence does not serve the purpose of deterring law enforcement officers when the warrant is subsequently found legally devoid of probable cause. United States v. Leon does not stand for appellants' proposition that the detective's failure to include all facts of which he may have knowledge concerning the character of an informant establishes bad faith of the officer justifying suppression of evidence. Rather, suppression is appropriate if the officers were dishonest or reckless in preparing their affidavit or could not have harbored an objectively reasonable belief in the existence of probable cause. United States v. Leon, 104 S.Ct. at 3423; Illinois v. Gates, 462 U.S. 213 (1983); Spinelli v. United States, 393 U.S. 410 (1969); Aguilar v. Texas, 378 U.S. 108 (1964).

In the affidavit supporting the April search warrant, DuCharme declared that he was informed by Mike Burns that Magnum had told Burns that Patrick Point had burglarized Burns' office subsequent to the burglary of Burns' residence. Magnum stated that Patrick was in possession of money taken in that burglary. Magnum also specified that part of the money was in a safe in

---

[1]Appellants objected to the jury instruction on aiding and abetting on the ground the evidence did not support a charge of aiding and abetting. However, the evidence of Darlene's possession of the stolen property and her knowledge of the money cache acquired during her employment supported a theory that she willfully promoted the thefts and was a participant therein. Although both Patrick and Darlene raise the aiding and abetting issue on appeal, it is clear that Patrick had no basis for challenging his conviction under this issue since he was prosecuted throughout as a principal in both occurrences of burglary and larceny.

Patrick's bedroom in a back closet, part of the money was in a shed behind Patrick's housé, and part of the money was stacked in boxes in a southwest corner inside Patrick's house. Magnum also told Burns that Patrick had worked on burglar alarms and was familiar with their operation. Magnum indicated that Burns was his good friend and that he intended to help Burns. Magnum informed an officer J. Robinson that he was providing the information because he wanted to see justice done. The affidavit further declared that through independent investigation, DuCharme learned Patrick was unemployed but had been "living extravagantly," and had recently made cash purchases of property in an amount in excess of $5,800. DuCharme testified that although he knew Magnum had been in jail, he had no knowledge of Magnum's prior criminal record. The foregoing constituted a sufficient basis upon which DuCharme could have harbored an objectively reasonable belief in the existence of probable cause and the magistrate could have concluded probable cause existed. In light of the sufficiency of the self-verifying detail of the informant's statements to establish probable cause, we conclude that the failure to mention Magnum's incarceration in the affidavit supporting the search warrant was of peripheral relevancy. Franks v. Delaware, 438 U.S. 154 (1977). Appellants merely claim the detective omitted a fact but there is no claim of deliberate falsity or reckless disregard for the truth as in Franks v. Delaware, 438 U.S. at 171. The court did not err in denying the motion to suppress.

Appellants unsuccessfully petitioned the district court for a new trial on the theory that they had been ineffectively represented by counsel. We have considered each of the points raised by appellants in support of this claim and conclude that none have merit. The district court correctly determined that appellants had received the benefit of the "reasonably effective assistance of counsel." Warden v. Lyons, 100 Nev. 430, 683 P.2d 504 (1984); Strickland v. Washington, 104 S.Ct. 2052 (1984).

Finally, appellants claim the evidence was insufficient to support the verdicts of guilt as to the burglary and larceny counts. In reviewing the sufficiency of the evidence, the question is not whether this Court is convinced of appellants' guilt, but whether the jury acting reasonably, could have been convinced beyond a reasonable doubt by the evidence it had a right to consider. State v. Rhodig, 101 Nev. 608, 707 P.2d 549 (1985). The jury may reasonably rely on circumstantial evidence of guilt. The verdicts are supported by sufficient evidence of appellants' possession of the stolen goods, Darlene's knowledge of the whereabouts of the

property prior to the thefts, the physical evidence surrounding the circumstances of the thefts, and the evidence of appellants' spending spree prior to their arrest. *See* Wilkins v. State, 96 Nev. 367, 609 P.2d 309 (1981); People v. McFarland, 26 Cal.Rptr. at 473. Appellants' contention is without merit.

## DISPOSITION

We affirm the judgment as to appellant Darlene Point, and reverse the judgment as to appellant Patrick Point on the conviction for possession of stolen property. In all other respects, the judgment as to appellant Patrick Point is affirmed.